**J. Matthew Donohue**, OSB No. 065742
matt.donohue@hklaw.com
**Shannon Armstrong**, OSB No. 060113
shannon.armstrong@hklaw.com
**Kristin Asai**, OSB No. 103286
kristin.asai@hklaw.com
**Lisa Howley**, OSB No. 150152
lisa.howley@hklaw.com
**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300
Fax:  503.241.8014

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BLACK ROCK COFFEE BAR, LLC, an Oregon limited liability company;<br><br>       Petitioner,<br><br>  v.<br><br>BR COFFEE, LLC, a Nevada limited liability company; BR RAINBOW OP, LLC, a Nevada limited liability company; BR BLUE DIAMOND OP, LLC, a Nevada limited liability company; BR SILVERADO RANCH OP, LLC, a Nevada limited liability company; BR FT. APACHE OP, LLC, a Nevada limited liability company; BR RAINBOW NORTH OP, LLC, a Nevada limited liability company,<br><br>       Respondents. | Case No.<br><br>**PETITION TO COMPEL ARBITRATION**<br><br>**EXPEDITED HEARING REQUESTED** |

For its Petition to Compel Arbitration, Petitioner alleges as follows:

## INTRODUCTION AND NATURE OF PETITION

1.

Petitioner Black Rock Coffee Bar, LLC ("Black Rock" or "Petitioner") is a local company based in Bend, Oregon that successfully developed a national retail chain of drive-thru, sit-down, or combination coffee bars specializing in espresso, coffee, and related items with the Black Rock brand.  Respondents—a group of affiliated business entities associated with Chris Lattanzio and Michael Goergen—approached Black Rock as part of their purported plan to open the first Black Rock-branded franchises in Las Vegas, Nevada.  Unfortunately, Respondents quickly breached the terms of the parties' agreements, including the requirement to submit disputes between the parties relating to those franchises to mandatory arbitration with the American Arbitration Association ("AAA") in Portland, Oregon.

2.

As a result of Respondents' immediate breaches of their obligations to Black Rock, including misappropriating Black Rock's trade secrets and secretly converting Black Rock stores overnight into competing coffee shops, Petitioner commenced arbitration against Respondents on May 29, 2020 with the AAA in Portland, Oregon ("AAA Proceeding") pursuant to the exclusive arbitration agreements in the parties' agreements.  A true and correct copy of Petitioner's Arbitration Demand in the AAA Proceeding is attached as Exhibit 1 to the Declaration of J. Matthew Donohue in Support of Petition to Compel Arbitration ("Donohue Decl.") filed herewith.[1]

3.

Following Petitioner's initiation of the AAA Proceeding, Respondents told both Black Rock

---

[1] All exhibits cited herein are attached to the Declaration of J. Matthew Donohue.

Page 2 -    PETITION TO COMPEL ARBITRATION

HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

and the AAA that Respondents will not participate in the AAA Proceeding or recognize the authority of the AAA.

4.

Accordingly, Black Rock petitions this Court for an order pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, directing respondents BR Coffee, LLC ("BR Coffee"), BR Rainbow OP, LLC ("BR Rainbow"), BR Blue Diamond OP, LLC ("BR Blue Diamond"), BR Silverado Ranch OP, LLC ("BR Silverado"), BR Rainbow North OP, LLC ("BR Rainbow North"), and BR Ft. Apache OP, LLC ("BR Ft. Apache") (collectively, "Respondents") to proceed in this judicial district with arbitration in accordance with the exclusive arbitration agreements they signed.

**PARTIES**

5.

Petitioner Black Rock is an Oregon limited liability company with its principal place of business in Bend, Oregon.

6.

Respondent BR Coffee is a Nevada limited liability company created on or about August 2, 2018. Upon information and belief, BR Coffee's members, which are controlled by Lattanzio and Goergen, reside in Nevada and Oregon.

7.

Respondent BR Rainbow is a Nevada limited liability company created on or about December 5, 2018. On information and belief, BR Rainbow is owned by BR Coffee OP, LLC, is controlled by Lattanzio and Goergen, and is an affiliate of BR Coffee.

///

Page 3 -    PETITION TO COMPEL ARBITRATION

8.

Respondent BR Blue Diamond is a Nevada limited liability company created on or about December 6, 2018. On information and belief, BR Blue Diamond is owned by BR Coffee OP, LLC, is controlled by Lattanzio and Goergen, and is an affiliate of BR Coffee.

9.

Respondent BR Ft. Apache is a Nevada limited liability company created on or about December 10, 2018. On information and belief, BR Ft. Apache is owned by BR Coffee OP, LLC, is controlled by Lattanzio and Goergen, and is an affiliate of BR Coffee.

10.

Respondent BR Rainbow North is a Nevada limited liability company created on or about December 10, 2018. On information and belief, BR Rainbow North is owned by BR Coffee OP, LLC, is controlled by Lattanzio and Goergen, and is an affiliate of BR Coffee.

11.

Respondent BR Silverado is a Nevada limited liability company created on or about December 11, 2018. On information and belief, BR Silverado is owned by BR Coffee OP, LLC, is controlled by Lattanzio and Goergen, and is an affiliate of BR Coffee.

## JURISDICTION AND VENUE

12.

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 because Petitioner's underlying complaint in the AAA Proceeding involves, among other things, a claim for misappropriation of trade secrets against Respondents under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, which means the parties' underlying dispute provides for federal question jurisdiction. *See, e.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) (holding the federal

court should "determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy"); *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 684 (4th Cir. 2018) (holding that because the underlying "claim could, absent the arbitration agreement, be litigated in federal court under its federal-question jurisdiction, controversies regarding the arbitration of his claim . . . should likewise be resolved in federal court"); *Singer v. Stuerke*, No. 2:16-cv-02526-KJD-GWF, 2017 WL 2603305, at *3 (D. Nev. June 14, 2017) (noting that a properly pleaded DTSA claim provides subject matter jurisdiction over petition to compel arbitration).

13.

This Court has personal jurisdiction over Respondents because they entered into agreements or received a direct benefit from the agreements with Black Rock, a resident of Oregon, and agreed in those agreements that any disputes would be resolved by binding arbitration in Portland, Oregon. In addition, the parties' dispute involves Respondents' intentional misappropriation of Black Rock's trade secrets, which causes injury to Black Rock in Oregon.

14.

Venue is appropriate in the District of Oregon pursuant to 28 U.S.C. § 1391 because the GTA and Franchise Agreements require that any disputes between the parties must be resolved through binding arbitration in Portland, Oregon, which is within this judicial district.

## **FACTUAL ALLEGATIONS**

I.    **BR Coffee executes the GTA, with a binding arbitration provision, to obtain the exclusive right to open Black Rock-branded franchises in Clark County, Nevada.**

15.

In 2019, BR Coffee approached Black Rock to open the first Black Rock-branded franchises in Las Vegas, Nevada.  On or about August 21, 2019, BR Coffee executed a Geographic Territory Agreement ("GTA") with Black Rock.  A true and correct copy of the executed GTA is attached to

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

the Declaration of J. Matthew Donohue as Exhibit 2.

16.

The GTA provides that BR Coffee "or its applicable affiliate(s) plan to open and operate multiple Coffee Bars" in Clark County, Nevada (*i.e.*, Las Vegas) "according to the terms and conditions set forth in this Agreement."  (Ex. 2 at p. 1.)  BR Coffee also agreed that "each Coffee Bar opened by [BR Coffee] or its applicable affiliate(s) will be operated under an individual franchise agreement with [Black Rock]."  (*Id.*)

17.

The GTA grants to BR Coffee the exclusive right and obligation to develop ten Coffee Bars within Clark County, Nevada during the term of the agreement, including five specific locations in Las Vegas based on leases with BR Rainbow, BR Blue Diamond, BR Silverado, BR Rainbow North, and BR Ft. Apache (collectively, "Franchisees").  (*Id.* at ¶ 2.3.)  In exchange, Black Rock agreed that it will not operate, or grant a license or franchise to a third party to operate, a Coffee Bar in the geographic area during the term of the GTA.  (*Id.*)

18.

As relevant to this Petition, BR Coffee expressly agreed under the GTA that "[a]ll disputes and controversies between the parties, or arising out of or relating to the performance or interpretation" of the GTA, other than an application for a temporary restraining order, preliminary injunction, or similar emergency injunctive relief to prevent irreparable harm, shall be exclusively adjudicated in arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association."  (*Id.* at ¶ 12.3.)

///

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

19.

BR Coffee further agreed that the arbitration shall be held in Portland, Oregon, that any

issues of arbitrability be governed by the FAA, and that the GTA will be governed by the substantive

law of Oregon.  (*Id.*)

20.

The parties further agreed that, in the event of a conflict between the GTA and the specific

franchise agreements to be executed by BR Coffee's affiliates, the GTA would control.  (*Id.* ¶ 12.6.)

21.

BR Coffee also specifically agreed that "NO REPRESENTATIONS OR PROMISES HAVE

BEEN MADE BY [BLACK ROCK] TO INDUCE [BR COFFEE] TO ENTER INTO THIS

AGREEMENT EXCEPT AS SPECIFICALLY INCLUDED HEREIN."  (*Id.* ¶ 13.4.)

**II.    The GTA expressly provides that the Franchisees are "affiliates" of BR Coffee that are bound by the GTA.**

22.

BR Coffee agreed under the GTA that the Franchisees are "affiliates" of BR Coffee that

agreed to develop Coffee Bars pursuant to the GTA.  For example, the GTA expressly defines BR

Rainbow as an affiliate of BR Coffee.  (*Id.* ¶ 11.1.)  In addition, the GTA provides that Schedule 2.4

identifies BR Coffee's affiliates that have signed leases for the locations of BR Coffee's franchise

Coffee Bars.  (*Id.* ¶ 2.4.)

23.

Schedule 2.4 of the GTA identifies each of the Franchisees as BR Coffee's "affiliates" that

executed, or were in the process of executing, leases for the Coffee Bars pursuant to the GTA.  (*Id.*

at p. 72.)  Specifically, BR Rainbow executed a lease for the location at 7565 South Rainbow

Boulevard, Las Vegas, Nevada ("Rainbow Store"); BR Blue Diamond executed a lease for the

location at 4855 Blue Diamond, Las Vegas, Nevada ("Blue Diamond Store"); BR Silverado

executed a lease for the location at 45 E. Silverado Ranch Blvd., Suite 115, Las Vegas, Nevada

("Silverado Store"); BR Rainbow North executed a lease for the location at 5650 S. Rainbow Blvd.,

Las Vegas, Nevada; and BR Ft. Apache executed a lease for the location at APN: 163-30-818-002,

Las Vegas, Nevada.  (*Id.*)

24.

Section 12.11 of the GTA further provides that "[t]he affiliated entities of [BR Coffee] that

enter into a Franchise Agreement with [Black Rock] for an individual Coffee Bar under this

Agreement are third party beneficiaries to this Agreement and are entitled to the rights and benefits

hereunder[.]"  (*Id.* ¶ 12.11.)

25.

As a result of the express language of the GTA, each of the Franchisees are bound by the

exclusive arbitration clause in the GTA.

**III.    BR Rainbow, BR Blue Diamond, and BR Silverado execute Franchise Agreements with exclusive arbitration provisions.**

26.

Consistent with the GTA, BR Coffee's affiliates BR Rainbow and BR Blue Diamond each

executed a Franchise Agreement with Black Rock with an effective date of August 23, 2019 for the

Rainbow and Blue Diamond Stores, respectively.  Similarly, BR Silverado executed a Franchise

Agreement with Black Rock with an effective date of October 11, 2019 for its third franchise

location at the Silverado Store.  True and correct copies of the Franchise Agreements with BR

Rainbow, BR Blue Diamond, and BR Silverado are attached as Exhibits 3, 4, and 5, respectively, to

the Declaration of J. Matthew Donohue.

///

27.

Each of the Franchise Agreements contain a mandatory arbitration clause. Specifically, under Section 16.5 of the Franchise Agreements, BR Rainbow, BR Blue Diamond, and BR Silverado, and their "controlling principals" each agreed that

> ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO THE FRANCHISE, FRANCHISEE'S ESTABLISHMENT OR OPERATION OF ANY FRANCHISE UNDER THIS AGREEMENT . . . INCLUDING, BUT NOT LIMITED TO, ANY CLAIM . . . CONCERNING THE ENTRY INTO, THE PERFORMANCE UNDER OR THE TERMINATION OF THE AGREEMENT, OR ANY OTHER AGREEMENT BETWEEN FRANCHISOR, OR ITS AFFILIATES, AND FRANCHISEE . . . . SHALL, EXCEPT AS SPECIFICALLY SET FORTH HEREIN AND IN SECTION 16.6, BE REFERRED TO ARBITRATION.

(Ex. 3 ¶ 16.5.1; Ex. 4 ¶ 16.5.1; Ex. 5 ¶ 16.5.1.) BR Rainbow, BR Blue Diamond, and BR Silverado further agreed that the binding arbitration would take place in Portland, Oregon. (*Id.*)

28.

Each of the Franchise Agreements also includes an Addendum that further specifies the manner of exclusive arbitration between the parties. Pursuant to the Addendum to the Franchise Agreements, BR Rainbow, BR Blue Diamond, and BR Silverado again agreed that the arbitration would be held in Portland, Oregon, and that the arbitrator will be selected pursuant to the AAA's Commercial Arbitration Rules, consistent with the GTA. (Ex. 3 at Add. ¶ 14; Ex. 4 at Add. ¶ 14; Ex. 5 at Add. ¶ 14.)

## IV.    Respondents failed to comply with the GTA and Franchise Agreements.

29.

Rather than comply with the terms of the various agreements, Respondents almost immediately failed to perform their obligations under the GTA and Franchise Agreements. For

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

example, despite executing the Franchise Agreement and opening the Silverado Store, BR

Coffee and BR Silverado failed to pay the initial franchise fee or other fees set forth in the

agreements, which totaled $52,348.12.  (Ex. 1 ¶ 39.)  Those fees remain unpaid and have

incurred late fees under the Franchise Agreement since November 2019.  (*Id.*)

30.

From October 2019 through April 2020, Black Rock engaged in numerous discussions with

BR Coffee and its affiliates relating to their failure to make all required payments under the

Franchise Agreement or otherwise comply with their obligations under the applicable agreements,

including sending invoices to BR Coffee and its affiliates for the unpaid amounts.  (*Id.* ¶ 40.)

During those discussions, BR Coffee and its affiliates gave several explanations and excuses for

their delay, and assured Black Rock that BR Coffee and its affiliates would comply with their

obligations.  (*Id.*).

31.

In April 2020, Black Rock sent formal notice to BR Coffee and BR Silverado that their

repeated failures to pay equate to a violation of BR Silverado's Franchise Agreement and a cross-

default of the Franchise Agreements executed by each of BR Coffee's affiliates.  (*Id.* ¶ 41.)   Black

Rock demanded financial information for each of BR Coffee's affiliates, which they previously

failed to provide as required in those agreements, and immediate payment of the outstanding

$56,749.29 in fees or else Black Rock would exercise its purchase options under the various

agreements.  (*Id.*)

///

///

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

32.

In response, BR Coffee and BR Silverado asserted that they did not owe the fees to Black Rock and that Black Rock had no basis to buy-back the franchises under the various agreements. (*Id.* ¶ 42.)

33.

Rather than pay their outstanding fees, Respondents suddenly asserted they had rescinded the GTA and Franchise Agreements, and immediately rebranded their Black Rock franchises to operate competing "Royal Coffee Roasting Co." stores in violation of the GTA and applicable Franchise Agreements. (*Id.* ¶ 43.) In other words, Respondents seek to capitalize on Black Rock's experience, brand, and business model without paying the applicable franchise costs and in breach of the parties' agreements.

34.

BR Coffee is already operating competing coffee bars in Las Vegas, Nevada at the Rainbow, Blue Diamond, and Silverado Stores under the brand name "Royal Coffee Roasting Co." (*Id.*) Respondents are currently using Black Rock's trade secrets, goodwill, supplies, and other benefits exclusively granted under the GTA and/or Franchise Agreements at the Rainbow, Blue Diamond, and Silverado Stores. (*Id.*)

**V.    Black Rock initiates the AAA Proceeding based on Respondents' breaches of the various agreements and misappropriation of Black Rock's trade secrets.**

35.

On May 29, 2020, Black Rock filed, and served on Respondents, its Arbitration Demand in the AAA Proceeding pursuant to the mandatory arbitration provisions in the parties' agreements. (Ex. 1.) Specifically, Black Rock's Arbitration Demand asserts claims for breach of contract under the GTA and Franchise Agreements, misappropriation of trade secrets under the DTSA and Oregon

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

law, and declaratory relief.  (*Id.*)  Each of those claims is subject to arbitration because Black Rock's

claims constitute a dispute between the parties, and they arise out of or relate to the parties'

performance under the GTA or Franchise Agreements.  (*Id.*)

## VI.    Respondents refuse to arbitrate the parties' dispute as required by the GTA and Franchise Agreements.

36.

The parties conducted their initial administration conference in the AAA Proceeding on June

8, 2020.  (Donohue Decl. ¶ 2.)  During that conference, Respondents denied that they were subject to

binding arbitration and refused to participate in the AAA Proceeding.  (*Id.*)

37.

Following the conference call, Respondents' counsel sent a letter to the AAA stating that

Respondents "categorically object" to the AAA Proceeding, that they had filed a civil action against

Black Rock, and that they intended to enjoin the AAA Proceeding.  (*Id.* ¶ 4, Ex. 6.)

38.

On June 16, 2020, Respondents' counsel sent a letter to the AAA expressly refusing to

arbitrate, and asserted that Respondents "have not entered into a *valid* arbitration agreement."  (*Id.* ¶

4, Ex. 7.)  Specifically, Respondents argue that the "arbitration agreement advanced by Black Rock

was obtained through fraud in the execution and is, therefore, void *ab initio.*"  (*Id.*)  Respondents

also asserted that they intended to seek "a temporary restraining order and preliminary injunction

enjoining [the AAA Proceeding]."  (*Id.*)

39.

Despite representing to the AAA and Black Rock that it had filed a lawsuit in Orange County

Superior Court ("California Litigation"), Respondents have not served a copy of the complaint or

summons on Black Rock or its principals, and the Orange County Superior Court's docket does not

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

indicate that such a complaint has been filed.  (Donohue Decl. ¶ 3.)  A copy of Respondents'

purported complaint in the California Litigation is attached as Exhibit 8 to the Declaration of J.

Matthew Donohue.

40.

Respondents' purported complaint in the California Litigation asserts, among other things,

that Respondents agreed any coffee bars they developed would be done pursuant to and "under the

GTA."  (Ex. 8 ¶ 31.)

41.

Although Respondents are aware of the AAA Proceeding and the mandatory arbitration

provisions in the GTA and Franchise Agreements, Respondents have refused to assert their claims

from the California Litigation in the AAA Proceeding, intend to enjoin the AAA Proceeding, and

refuse to comply with the arbitration agreements.

**VII.  Valid agreements to arbitrate exist and mandate the Court to compel the parties' dispute to arbitration.**

42.

The parties have a dispute that is subject to mandatory arbitration under the GTA and

Franchise Agreements.  Specifically, Black Rock initiated the AAA Proceeding to pursue its claims

for breach of contract and misappropriation of trade secrets against Respondents.

43.

In addition, Respondents' related claims asserted in the California Litigation, including

claims for fraud, negligent misrepresentation, declaratory relief, and violations of California,

Oregon, and Nevada franchise law, are subject to arbitration because they constitute a dispute

between the parties, and because they arise out of or relate to the parties' performance under the

GTA or Franchise Agreements.

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

44.

The parties' written agreements to arbitrate are valid and enforceable, and require Respondents to submit to binding arbitration all disputes between Black Rock and Respondents, including any disputes arising out of or relating to the GTA and/or Franchise Agreements.  Pursuant to 9 U.S.C. § 4, Petitioner is entitled to an order directing Respondents to proceed with binding arbitration of all Respondents' claims in the AAA Proceeding in Portland, Oregon, as required by the GTA and Franchise Agreements.

## LEGAL STANDARD TO COMPEL ARBITRATION

45.

"The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' and permits a party 'aggrieved by the alleged refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement."  *Brockie v. Spencer Gifts LLC*, No. 3:19-CV-00101-SB, 2019 WL 4935616, at *2 (D. Or. July 23, 2019), report and recommendation adopted, No. 3:19-CV-00101-SB, 2019 WL 4934944 (D. Or. Oct. 4, 2019) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

46.

The FAA requires "federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted); *Chiron*, 207 F.3d at 1130 ("[T]he Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' ") (citation and emphasis omitted).

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

47.

"The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen*, 763 F.3d at 1175 (citing *Chiron*, 207 F.3d at 1130); 9 U.S.C. § 4.  In determining whether an arbitration agreement encompasses the dispute at issue, courts must be mindful that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Any doubts as to the scope of an arbitration agreement should be resolved in favor of arbitrability.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

## ARGUMENT

48.

The FAA requires the Court to issue an order directing Respondents to proceed with binding arbitration of Black Rock's claims asserted in the AAA Proceeding in Portland, Oregon.  Both the GTA and the Franchise Agreements contain arbitration agreements, and the parties delegated the issue of whether the parties' dispute is subject to arbitration to the arbitrator.  As a result, the FAA does not permit the Court here to exercise its discretion to determine the arbitrability of Black Rock's claims and the Court must order Respondents to arbitration.  However, even if this Court were to decide the issue of arbitrability, it should still compel arbitration because the relevant arbitration agreements unambiguously apply to the parties' dispute.

**I.    The FAA requires the Court to compel arbitration because the parties agreed to arbitrate and expressly delegated the issue of arbitrability to the arbitrator.**

49.

Courts must generally analyze two gateway issues when deciding whether to compel arbitration under the FAA: (1) whether a valid agreement to arbitrate exists; and (2) if it does,

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

whether the agreement encompasses the dispute at issue.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  However, the parties may delegate these gateway issues to the arbitrator by including a clear and unmistakable delegation provision in the arbitration agreement.  *Id*.; *see also New Prime Inc. v. Oliveira,* 139 S. Ct. 532, 538 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question [of] whether the parties' dispute is subject to arbitration.") (citation omitted).  Here, the parties agreed to arbitrate their disputes and delegated to the arbitrator the initial question of whether the parties' dispute is subject to arbitration.

A.    **Respondents agreed to arbitration in both the GTA and Franchise Agreements.**

50.

Respondents entered into unambiguous arbitration agreements with Black Rock in the GTA and Franchise Agreements.  In determining whether parties have entered into a binding arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  "Whether a binding contract exists between the parties is a question of law." *Citibank of S.D. N.A. v. Santoro*, 210 Or. App. 344, 348 (2006).  "Oregon subscribes to the objective theory of contract, which provides that the existence and terms of a contract are determined by evidence of the parties' communications and acts." *Rhoades v. Beck*, 260 Or. App. 569, 572 (2014).  "[T]he law requires only evidence of 'mutual assent,' whether that assent is expressed through an offer and an acceptance or is manifested by conduct." *Citibank*, 210 Or. App. at 349 (quoting *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 153–54 (2001)).

51.

Here, the arbitration agreement in the GTA applies to both BR Coffee and the Franchisees. The GTA states that BR Coffee **or its affiliates** plan to open and operate multiple Black Rock stores

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

in Las Vegas "according to the terms and conditions set forth in [the GTA]." (Ex. 2 at p. 1.) BR

Coffee further agreed that the Franchisees are its "affiliates" under the GTA (*see id.* ¶¶ 2.4, 11.1),

and that its affiliates entering into franchise agreements with Black Rock are third party beneficiaries

to the GTA, and thus entitled to the GTA's rights and benefits. (*Id.* ¶ 12.11.)

52.

Additionally, Respondents' purported complaint in the California Litigation asserts, among

other things, that Respondents agreed any coffee bars they developed would be done pursuant to and

"under the GTA." (Ex. 8 ¶ 31.) *See Castillo v. Barrera*, 146 Cal. App. 4th 1317, 1324 (2007)

("[A]llegations contained in the plaintiff's complaint . . . constitute judicial admissions ").

53.

Accordingly, Respondents agreed to the arbitration set forth in Section 12.3 of the GTA.

That section states in relevant part:

> This Agreement shall be governed by the substantive law of the state
> of Oregon, without regard to conflicts-of-law rules and without
> regard to the United Nations Convention on Contracts for
> International Sale of Goods; provided, however, that the Federal
> Arbitration Act shall govern the provisions respecting arbitration
> and arbitrability. All disputes and controversies between the parties,
> or arising out of or relating to the performance or interpretation of
> this Agreement, which cannot be settled by mutual agreement of the
> parties, other than an application for a temporary restraining order,
> preliminary injunction or similar emergency injunctive relief to
> prevent irreparable harm, shall be finally and conclusively settled in
> accordance with the Commercial Arbitration Rules of the American
> Arbitration Association.

(Ex. 2 ¶ 12.3.)

54.

BR Coffee also agreed in the GTA that "each Coffee Bar opened by [BR Coffee] or its

applicable affiliate(s) will be operated under an individual franchise agreement with [Black Rock]."

(*Id.* at p. 1.)  The parties further agreed, however, in the event of a conflict between the GTA and the specific franchise agreements to be executed by BR Coffee's affiliates, the GTA would control.  (*Id.* ¶ 12.6.)

55.

Consistent with the GTA, BR Rainbow, BR Blue Diamond and BR Silverado executed separate Franchise Agreements with Black Rock.  (*See, e.g.*, Exs. 3–5.)  Each of the Franchise Agreements contains a mandatory arbitration clause similar to the GTA.  Specifically, under Section 16.5 of the Franchise Agreements, BR Rainbow, BR Blue Diamond, and BR Silverado, and their "controlling principals" each agreed that

> ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO THE FRANCHISE, FRANCHISEE'S ESTABLISHMENT OR OPERATION OF ANY FRANCHISE UNDER THIS AGREEMENT . . . INCLUDING, BUT NOT LIMITED TO, ANY CLAIM . . . CONCERNING THE ENTRY INTO, THE PERFORMANCE UNDER OR THE TERMINATION OF THE AGREEMENT, OR ANY OTHER AGREEMENT BETWEEN FRANCHISOR, OR ITS AFFILIATES, AND FRANCHISEE . . . SHALL, EXCEPT AS SPECIFICALLY SET FORTH HEREIN AND IN SECTION 16.6, BE REFERRED TO ARBITRATION.

(Ex. 3 ¶ 16.5.1; Ex. 4 ¶ 16.5.1; Ex. 5 ¶ 16.5.1.)  BR Rainbow, BR Blue Diamond, and BR Silverado further agreed that the binding arbitration would take place in Portland, Oregon, and that the arbitrator would be selected pursuant to the AAA's Commercial Arbitration Rules.  (Ex. 3 at Add. ¶ 14; Ex. 4 at Add. ¶ 14; Ex. 5 at Add. ¶ 14.)

56.

In sum, Respondents have undisputedly agreed to arbitrate any and all disputes they may have with Black Rock under both the GTA and the Franchise Agreements.

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

**B.      The arbitration agreement in the GTA delegates to the arbitrator the initial question of whether the dispute is arbitrable.**

57.

The parties agreed that the arbitrator—not the Court—would decide issues of arbitrability by including a clear and unmistakable delegation provision in the GTA.  The GTA incorporates the Commercial Arbitration Rules of the AAA.  Because the arbitration agreements have a valid delegation clause, the Court is mandated to order Respondents to participate and resolve their issues in the AAA Proceeding—including whether the arbitration agreement in the GTA is enforceable.

58.

It is well-established that incorporation of the AAA rules into a contractual arbitration provision "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.  This is because "one of [the AAA arbitration rules] provides that the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id*.; (*see also* Ex. 9 (setting forth AAA Rule R-7.)  The AAA rules also vest the arbitrator with jurisdiction to rule on any objections with respect to the existence or scope of the arbitration agreement, as well as the arbitrability of any claim or counterclaim.  (Ex. 9.)

59.

Thus, where a court is confronted with an arbitration agreement that includes within it a delegation provision designating the AAA Rules, the court may not decide arbitrability and must refer the issue to the arbitrator.  *See, e.g*., *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019) (disapproving of the practice of some federal courts "short-circuit[ing] the process and decid[ing] the arbitrability question themselves").

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

60.

Here, the parties have agreed to delegate arbitrability questions to the arbitrator through the

delegation clause in the GTA.  Accordingly, the Court must compel arbitration of all issues,

including whether the GTA's arbitration provision covers the dispute between the parties and

whether the arbitration provision is enforceable.  *See Henry Schein, Inc.*, 139 S. Ct. at 529 ("When

the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the

contract.").

**II.    Even if the Court does not find that the initial question of arbitrability is delegated in
         the GTA, it should still compel arbitration because an enforceable arbitration
         agreement covers this dispute.**

61.

Even if the GTA's arbitration clause did not apply to all of Respondents—and the Court were

the one to determine arbitrability—the result would still be the same: this Court should compel

arbitration because Respondents are bound by the arbitration provisions in the various agreements

they signed with Black Rock.  Specifically, (1) each of the Respondents has agreed to arbitrate their

disputes with Black Rock or is estopped from asserting otherwise, and (2) the relevant arbitration

agreements cover the claims that Black Rock has asserted in the AAA Proceeding.  *See Brennan*,

796 F.3d at 1130 (explaining two-party inquiry for whether a dispute is arbitrable: (1) whether a

valid agreement to arbitrate exists; and (2) if it does, whether the agreement encompasses the dispute

at issue).

///

///

///

///

///

Page 20 -    PETITION TO COMPEL ARBITRATION

A. **Respondents have agreed to valid arbitration clauses in the GTA and the Franchise Agreements.**

62.

As described above in paragraphs 50 to 56, each of the Respondents is bound by a written arbitration agreement with Black Rock in the GTA and several of the Respondents also agreed to arbitration in separate Franchise Agreements.

63.

In addition, all of the Franchisees are bound by the GTA's arbitration provision under the doctrine of equitable estoppel because they received benefits under the agreement. As the Ninth Circuit has recognized, equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (2009) (internal quotation marks omitted). Thus, "a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* at 1046; *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (*citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) ("*DuPont*") for same). As the *DuPont* court explained, this theory "prevent[s] a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *DuPont*, 269 F.3d at 200.

64.

Thus, when a party receives a direct benefit from a contract containing an arbitration clause, it will be estopped from denying its obligation to arbitrate. *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (holding non-signatory bound by arbitration provision where it received direct benefits from contract to which it was not a party, including lower

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

insurance); *see also Eclipse Consulting, Inc. v. BDO USA, LLP*, No. 3:17–cv–826–AC, 2018 WL

925616, at *6 (D. Or. Jan. 8, 2018) (noting estoppel applicable where non-signatory knowingly

exploits benefits from the agreement and receives benefits flowing directly from the agreement);

*Comer*, 436 F.3d at 1102 (noting whether the non-signatory took "advantage" of the agreement with

the arbitration provision relevant to inquiry).

65.

The Franchisees have received benefits from the GTA and thus are bound by the arbitration

provision in the agreement.  The GTA expressly permits the Franchisees to receive benefits under

the contract.  For example, the GTA permits BR Coffee and its "affiliates" to open and operate

multiple Black Rock coffee bars.  As the parties acknowledged in the heavily-negotiated GTA, BR

Coffee "*or its applicable affiliate(s)* plan to open and operate" Black Rock-branded coffee bars

pursuant to the GTA.  (Ex. 2 at p. 1 (emphasis added).)  The GTA sets forth the overarching

framework by which Respondents had the exclusive right to open coffee bars within the assigned

geographic territory and how those coffee bars would be opened and operated.  Black Rock granted

to BR Coffee the exclusive "right to develop Coffee Bars" in the geographic territory" and to use its

proprietary marks.  (*Id*. ¶¶ 2.1, 2.3, 5.4 & p. 1.)  In return, BR Coffee agreed, among other things, to

open at least the number of coffee bars specified on Schedule 2.1 (ten) and that it would enter into

Black Rock's then-current form of franchise agreement.  (*Id.* ¶¶ 3.1, 5.4.)

66.

Consistent with the terms of the GTA, the Franchisees are the ones that actually have

engaged in "open[ing] and operat[ing]" the coffee bars required by the GTA.  (*See* Ex. 8 ¶¶ 23, 25-

27, 44, 54; Exs. 3–5, 10.)  And in exchange for performing BR Coffee's obligation to open and

operate coffee bars under the GTA, the Franchisees knowingly received and made use of the benefits

Page 22 -   PETITION TO COMPEL ARBITRATION

that Black Rock promised to deliver under the GTA, including Black Rock's proprietary information and Black Rock's exclusivity commitment.  (*See, e.g.*, Ex. 11 (informing Black Rock that Respondents were "removing all Black Rock Coffee Bar® trademarks and branding from their coffee bars" and would "tender back to [Black Rock] all written and other materials they have received").)

67.

*Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270 (S.D.N.Y. 2011), is instructive. The defendant in that case was a non-signatory affiliate of a party (DH Technologies) that had signed a purchase agreement with one of the plaintiffs.  *Id*. at 271.  In the purchase agreement, DH Technologies agreed that either it or its affiliates would execute a license agreement with plaintiffs by which plaintiffs would license certain trademarks.  *Id*.  The non-signatory defendant was the one to execute the license agreement.  The purchase agreement had an arbitration provision; the license agreement did not.  Plaintiffs commenced arbitration arising out of the defendant's use of the trademarks.  The court rejected the defendant's argument that its use of the trademarks was governed exclusively by the license agreement and instead held that the defendant was estopped from avoiding arbitration under the purchase agreement's arbitration provision.  Of particular relevance to the court was that the purchase agreement explicitly contemplated the license of the trademarks to DH Technologies "*or one of its affiliates*" and the defendant, in full knowledge of the purchase agreement, proceeded to use the benefit provided for by the purchase agreement.  *Id*. at 276–77 (emphasis added).

68.

The same is true here.  In the California Litigation, Respondents repeatedly admit that they understood and intended the GTA to be a source of both rights and obligations for all the

HOLLAND & KNIGHT LLP
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

Franchisees as well as BR Coffee. For example, Respondents admit that the GTA is the legal basis that allows each of the Franchisees "to develop, open, and operate" coffee bars in Clark County, Nevada. (Ex. 8 ¶ 31.) They also expressly contend that each coffee bar the Respondents developed (including each coffee bar operated by the Franchisees) would be "developed by [Respondents] under the GTA." (*Id.* ¶ 31.) And they admit that the GTA "referred to contemplated Franchise Agreements and leases held by" each one of the five Franchisees. (*Id.* ¶ 42.) The Franchisees have admitted they received valuable benefits flowing from the GTA; they cannot now avoid the GTA's arbitration provision.

**B.      The arbitration provisions in the GTA and Franchise Agreements cover the present dispute.**

69.

The arbitration provisions in the GTA and Franchise Agreements encompass Black Rock's claims in the AAA Proceeding. The former requires arbitration of "[a]ll disputes and controversies between the parties, or arising out of or relating to the performance or interpretation of this Agreement," and the latter "any claim, controversy or dispute arising out of or relating to the franchise, franchisee's establishment or operation of any franchise under the agreement." (*See, e.g.*, *supra* at ¶¶ 18, 27.) These are classic examples of broad arbitration clauses that require arbitration of all disputes touching upon matters covered by the contracts.

70.

The language "arising out of or relating to" has been labeled a "broad arbitration clause." *See, e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (noting arbitration clause containing the phrase "arising out of or relating to" is a "broad arbitration clause"); *Simula,*

Page 24 -    PETITION TO COMPEL ARBITRATION

*Inc.*, 175 F.3d at 721 ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly.").

71.

A broad arbitration provision "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc.*, 175 F.3d at 721.  The factual allegations of the dispute "need only touch matters covered by the contract containing the [broad] arbitration clause." *Id.* at 721, 725 (holding that trade secret claim was referable to arbitration where the arbitration provision was broad in nature).

72.

Here, not only did the Respondents agree to arbitrate "all disputes," Black Rock's claims all touch upon, and have their origin in, the GTA and Franchise Agreements.  For example, Black Rock's declaratory judgment claim seeks, among other things, a declaration that the GTA and Franchise Agreements are valid and enforceable; Black Rock claims that Respondents breached the GTA and Franchise Agreements by various conduct, including failing to pay franchise and other fees, failing to operate and maintain the stores, and breaching noncompetition obligations in the agreements; Black Rock alleges that Respondents have misappropriated trade secrets; and Black Rock asserts an alternative claim of unjust enrichment.  (Ex. 1 ¶¶ 45-106.)  Thus, to the extent the Court determines arbitrability, it must compel arbitration given the broad nature of the arbitration provisions.

## **NATURE AND PURPOSE OF RELIEF REQUESTED**

73.

Petitioner repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

///

Page 25 -    PETITION TO COMPEL ARBITRATION

74.

Black Rock respectfully requests that this Court issue an order compelling Respondents to arbitrate the parties' dispute, including Black Rock's claims in the AAA Proceeding, in accordance with the arbitration agreements in the GTA and Franchise Agreements.

75.

Petitioner's relief is essential because Respondents have already disregarded the exclusive arbitration agreements by refusing to participate in the AAA Proceeding, asserting that they intend to enjoin the AAA Proceeding, and initiating the California Litigation.  Respondents' pursuit of the California Litigation is in direct violation of the requirement under the GTA and Franchise Agreements that all disputes between the parties, including any disputes arising out of or relating to those agreements, be resolved through binding arbitration in Portland, Oregon.  Accordingly, an order to compel arbitration is essential to enforce the parties' agreement to arbitrate thereunder.

76.

Section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

///

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

77.

This Court would have jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, save for the arbitration provision in the GTA and Franchise Agreements.

78.

Respondents' failure to comply with the arbitration provisions of the GTA and/or Franchise Agreements, including their intent to enjoin the AAA Proceeding, constitutes Respondents' "failure, neglect, or refusal" to abide by the arbitration provisions of the GTA and/or Franchise Agreements.

79.

Petitioner is aggrieved by Respondents' failure, neglect, or refusal to arbitrate in accordance with the parties' agreements, including but not limited to, by defending the AAA Proceeding from a stay or injunction, and by having to defend itself in the California Litigation.

80.

The parties expressly agreed that any issues of arbitrability would be determined under the FAA and by the arbitrator, as described above.

81.

For the foregoing reasons, Petitioner is entitled to an order under Section 4 of the FAA, 9 U.S.C. § 4, directing Respondents to participate in the AAA Proceeding and that all disputes between the parties, including any disputes arising out of or relating to those agreements, be resolved through binding arbitration in Portland, Oregon, as required under the GTA and Franchise Agreements.

///

///

///

**HOLLAND & KNIGHT LLP**
601 SW 2nd Ave., Ste. 1800
Portland, OR 97204
Telephone:  503.243.2300

**PETITION TO COMPEL ARBITRATION AND PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests the following:

(1)　　An Order directing Respondents to participate in the AAA Proceeding and that all

disputes between the parties, including any disputes arising out of or relating to those

agreements, be resolved through binding arbitration in Portland, Oregon, as required

under the GTA and Franchise Agreements.

(2)　　Award Petitioner its attorneys' fees and related costs and disbursements;

(3)　　That the Court retain jurisdiction over this action for purposes of confirming any

arbitral award, pursuant to 9 U.S.C. § 9; and

(4)　　Grant any such other relief as the Court shall deem just and appropriate.

Dated this 17th day of June, 2020.

HOLLAND & KNIGHT LLP

By:　_s/ J. Matthew Donohue_
　　　J. Matthew Donohue, OSB No. 065742
　　　Email: matt.donohue@hklaw.com
　　　Shannon Armstrong, OSB No. 060113
　　　Email: shannon.armstrong@hklaw.com
　　　Kristin Asai, OSB No. 103286
　　　Email: kristin.asai@hklaw.com
　　　Lisa Howley, OSB No. 150152
　　　Email: lisa.howley@hklaw.com
　　　601 SW Second Avenue, Suite 1800
　　　Portland, OR  97204
　　　Telephone:  503.243.2300
　　　Fax:  503.241.8014

　　　Attorneys for Petitioner