IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BLACK ROCK COFFEE BAR, LLC, | Case No. 3:20-cv-976-SI |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| BR COFFEE, LLC, *et al.*, | |
| Respondents. | |

J. Matthew Donahue, Joseph L. Franco, and Kristin Asai, HOLLAND & KNIGHT LLP, 601 SW Second Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Petitioner.

Justin G. Reden and Michael John Riddell, REDEN & REDEN APC, 16885 Via Del Campo Court, Suite 320, San Diego, CA 92127; and Casey M. Arbenz, PUGET LAW GROUP LLP, 938 Broadway, Tacoma, WA 98402. Of Attorneys for Respondents.

**Michael H. Simon, District Judge.**

In 2020 in this federal case, Black Rock Coffee Bar, LLC (Black Rock) petitioned the Court under the Federal Arbitration Act (FAA) to compel arbitration of Black Rock's dispute with BR Coffee, LLC; BR Rainbow OP, LLC; BR Blue Diamond OP, LLC; BR Silverado Ranch OP, LLC; BR Ft. Apache OP, LLC; and BR Rainbow North OP, LLC (collectively, the BR Entities). The Court granted the petition and ordered the BR Entities to arbitrate their dispute with Black Rock. During the arbitration, Black Rock moved the arbitrator to add as parties to the arbitration persons who owned in part or were otherwise associated with the BR entities, Michael

Goergen, Christopher Lattanzio, and the Robert Lattanzio Trust (BR Owners) (The BR Entities and BR Owners are collectively referred to as the "BR Parties"). The BR Owners disputed that the arbitrator had authority to determine whether they, as nonsignatories to the relevant underlying agreements, were parties to a contract requiring arbitration. The BR Owners refused to consent to jurisdiction within the arbitration. The BR Owners stated that they would challenge their addition to the arbitration in court. The arbitrator nonetheless granted Black Rock's motion and added the BR Owners as respondents in the arbitration.

After some wrangling in the arbitration about whose obligation it was to bring a court case, the BR Owners challenged in California state court the arbitrator's exercise of authority and purported jurisdiction over them in the arbitration. Black Rock removed those cases to federal court in California, and that court transferred venue to this Court. Due to an oversight, however, the cases were not immediately transferred. When they were eventually transferred in three separate cases, this Court consolidated them, with lead case No. 3:22-cv-1258-SI (Arbitrability Case). During the months the federal cases languished between venues, the arbitration continued, despite the dispute over the arbitrator's authority. The BR Owners repeatedly rejected the arbitrator's authority over them, refused to participate in the arbitration, and requested a stay of the arbitration pending court resolution of the arbitrator's authority and jurisdiction. The BR Parties eventually requested that the American Arbitration Association (AAA) remove and replace the arbitrator, and the BR Entities refused to participate in the arbitration while that request and the court proceedings naming the arbitrator as a defendant were pending. The arbitrator then entered what equated to case terminating sanctions against the BR Entities and the BR Owners and eventually granted summary judgment in favor of Black Rock, awarding damages plus attorney's fees in the millions of dollars.

Meanwhile, the parties discovered the problem with the venue transfer and this Court became involved in the Arbitrability Case. In that case, the Court framed the issues as first, whether the Court or the arbitrator was the proper authority to determine whether the BR Owners were subject to arbitration and second, if it was a determination for the Court, then whether the BR Owners actually were subject to arbitration. The Court first concluded that "[i]t is for the Court, and not the arbitrator, to determine whether [the BR Owners] have a valid arbitration agreement with Black Rock" and temporarily enjoined Black Rock from enforcing its arbitration award against the BR Owners. *Goergen v. Black Rock Coffee Bar, LLC* (*Black Rock I*), 2023 WL 142911, at \*4 (D. Or. Jan. 10, 2023). After concluding that it was the Court's decision whether the BR Owners were subject to arbitration, the Court allowed additional briefing on that issue. The Court ultimately concluded that the BR Owners, as nonsignatories, were not subject to arbitration and permanently enjoined Black Rock from directly enforcing its arbitration award against the BR Owners. *See Goergen v. Black Rock Coffee Bar, LLC* (*Black Rock II*), 2023 WL 1777980, at \*14 (D. Or. Feb. 6, 2023). The Court made no determination about whether the BR Owners may be subject to liability under some other theory, which would have to be separately litigated.

Now before the Court are Black Rock's Petition to Confirm Arbitration Award and the BR Entities' Motion to Vacate Arbitration Award. The parties stipulated to reopening this case and filing these cross-motions in this case. For the reasons discussed below, the Court denies Black Rock's petition and grants the BR Entities' Motion.[1]

---

[1] Notwithstanding the BR Entities' request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7-1(d)(1).

PAGE 3 – OPINION AND ORDER

## STANDARDS

Under the FAA, a party may move within one year to confirm an arbitration award in federal court. 9 U.S.C. § 9. If the contract giving rise to the arbitration does not specify the court in which the arbitration award is to be confirmed, "then such application may be made to the United States court in and for the district within which such award was made." *Id.* "[T]he court must grant such an order unless the award is vacated, modified, or corrected" under the FAA. *Id.*

Under the FAA, the district court may vacate the arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Arbitrators "exceed their powers" when an award "is completely irrational or exhibits a manifest disregard of law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (cleaned up). "An award is completely irrational 'only where the arbitration decision fails to draw its essence from the agreement.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009)).

A court is limited to reviewing an arbitrator's award on the grounds enumerated in the FAA. "These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration

procedures." *Kyocera*, 341 F.3d at 998. "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

## BACKGROUND

Black Rock is an Oregon company that developed a retail chain of coffee shops with locations in Oregon, Washington, Idaho, California, Arizona, and Texas. The BR Entities are a group of business entities affiliated with the BR Owners that sought to open and operate the first Black Rock franchises in Las Vegas, Nevada. The BR Parties ultimately opened three such franchises and had plans to open more before the parties' business relationship deteriorated.

The parties' business relationship deteriorated over a dispute about how much the BR Entities owed Black Rock in Initial Franchise Fees and Grand Opening Fees. The parties exchanged several emails stating their respective understanding of the amount of fees required under the contract, but they could not agree. Under a provision of the relevant contracts, the BR Parties eventually demanded a mediation to resolve the issues. Before that mediation occurred, however, Black Rock purported to exercise its contractual right to purchase the franchisees' Nevada locations. The price that Black Rock stated it would pay under the contract, 12 times EBITDA (earnings before interest, taxes, depreciation, and amortization), surprised the BR Parties, who expected that if Black Rock chose to exercise its purchase rights, the BR Parties would get back *at least* the amount of their investment in the franchises.

After the relationship deteriorated, the parties litigated whether the BR Entities had to proceed through arbitration. On August 14, 2020, the Court ordered the BR Entities to proceed to arbitration. The arbitration took place in Portland, Oregon, under the administration of the AAA.

The BR Entities and Black Rock chose as their arbitrator former King County Superior Court Judge George A. Finkle.[2]

After learning that on June 15, 2021, the day their previous lawyer withdrew, the BR Entities purported to give a priority secured interest in all their assets to the Robert Lattanzio Trust, Black Rock became concerned about a potential fraudulent transfer of assets. Black Rock demanded that the BR Owners rescind the purported security interest as a fraudulent transfer and warned that if the BR Owners failed to do so, Black Rock would move to add them to the arbitration. On September 24, 2021, Black Rock moved in the arbitration to amend the arbitration demand to add the BR Owners as respondents. On October 6, 2021, the BR Parties (with the BR Owners specially appearing only to object), submitted a letter response in the arbitration. The BR Parties asserted that only a court and not the arbitrator had the authority to determine if the BR Owners were subject to arbitration, that the BR Owners were not signatories to any relevant contract that contained an arbitration clause, that the purported fraudulent transfer did not confer jurisdiction upon the arbitrator, and that if Black Rock wanted to compel the BR Owners to arbitrate, Black Rock would need to do so in federal court. On October 19, 2021, Judge Finkle entered an Order granting Black Rock's motion to add the BR Owners to the arbitration over the BR Parties' objection. On October 20, 2021, Black Rock submitted its Second Amended Arbitration Demand, which included adding the BR Owners as respondents and adding new claims alleging fraudulent transfer and breach of limited personal guaranties.

The BR Entities notified the arbitrator of their intent to challenge the ruling and his jurisdiction over the BR Owners in court. Judge Finkle postponed setting an evidentiary hearing

---

[2] The Court refers to Mr. Finkle, the arbitrator in the underlying arbitration, as Judge Finkle in recognition of his former position of public service.

or a fact discovery deadline and requested a status report by December 2, 2021. Judge Finkle noted that the immediacy of any anticipated court ruling on a motion challenging his jurisdictional decision may affect his determination of an appropriate case schedule. In their December status report, the BR Entities reiterated their objection to the inclusion of the BR Owners in the arbitration and stated that upon further research, they believed it was not their burden to file a lawsuit excluding the BR Owners from arbitration, but Black Rock's burden to file a lawsuit compelling them into the court-ordered arbitration. The BR Entities also added an argument disputing the merits of Judge Finkle's decision and requested reconsideration of his October 19th Order.

On December 10, 2021, Judge Finkle reiterated his conclusion that he has authority to rule on whether the BR Owners are subject to arbitration, and he set a case schedule in light of the BR Parties' statement that they would not file a lawsuit challenging his October 19th Order. This schedule included the deadline for the BR Parties to respond to the Second Amended Arbitration Demand of December 29, 2021, a fact discovery deadline of June 24, 2022, and dispositive motion deadline of September 23, 2022.

On December 29, 2021, the BR Parties sent a letter to the AAA, reiterating their objections to jurisdiction over the BR Owners, asserting that the AAA had breached its contract to provide neutral and unbiased services, and stating that they would not be filing any response to the Second Amended Arbitration Demand but reserved their rights to do so in the future. On January 10, 2022, the BR Parties spoke with the AAA and objected to Judge Finkle, requesting that another arbitrator be assigned to the case. Aaron Gothelf, Esq., Vice President, became involved on behalf of the AAA. Judge Finkle had set a January 10, 2022 discovery hearing, and Mr. Gothelf rescheduled that hearing to January 27, 2022, in light of the BR Parties' impending challenge to Judge Finkle. Mr. Gothelf also set a briefing schedule for that challenge, with

briefing to be completed a week before January 27th. On January 14th, the BR Parties objected

to the AAA imposing a briefing schedule, and on January 26th the BR Parties objected to the

January 27th date for the discovery hearing. On January 27th, counsel for the BR Parties emailed

Mr. Gothelf and opposing counsel, stating that the BR Parties assumed the discovery hearing was

not going forward but because the AAA had not yet emailed a confirmation of cancellation, the

BR Parties were confirming that they would not attend the conference because their requests

remined pending before the AAA. The BR Parties, however, had not submitted their objections

to Judge Finkle before January 27th as requested by Mr. Gothelf.

The January 27, 2022 discovery hearing was held without the BR Parties. Neither

Mr. Gothelf nor opposing counsel informed Judge Finkle about the BR Parties' objection to the

hearing date or the BR Parties' belief that the hearing was not moving forward, even though

Mr. Gothelf had received the BR Parties' express objection on January 26th and implied

objection on January 27th. On January 28, 2022, Judge Finkle issued an Order on Discovery

Conference. He began by noting that the BR Parties did not appear or request postponement.

Judge Finkle ordered the BR Parties to provide on or before February 7, 2022, responses to all

discovery requests for production and requests for admission issued by Black Rock. He stated

that if the BR Parties failed to do so, Black Rock could file a motion for sanctions and he

anticipated ruling on that motion without oral argument.

Immediately upon receiving Judge Finkle's January 28th Discovery Order, counsel for

the BR Parties emailed Mr. Gothelf and demanded to know if he had informed Judge Finkle of

the BR Parties' objections to the hearing and request for postponement. Mr. Gothelf responded

that he did not do so because those requests were made to him without copying Judge Finkle.

Counsel for the BR Parties then included Judge Finkle in a further response email that explained

the details of counsel's January 26th objection to the January 27th hearing. The BR Parties

explained that the hearing had been rescheduled solely by Mr. Gothelf based on private communications, that the basis of the BR Parties' objection to the January 27th hearing date was also because of the subject of those private communications, and that counsel therefore continued to object directly to Mr. Gothelf. Counsel expressed his outrage that Mr. Gothelf did not reschedule the hearing, respond to counsel's January 27th email regarding his understanding that the hearing was not moving forward, or share the BR Parties' objection with the arbitrator during the hearing, leaving Judge Finkle to believe the BR Entities had simply "blew off the hearing." Counsel demanded "corrective action" by the AAA related to the discovery hearing. No changes, however, were made to the January 28th Discovery Order.

On February 7, 2022, the BR Parties sent to the AAA a letter objecting to Judge Finkle as arbitrator. They challenged his impartiality and his competency. On February 14, 2022, Black Rock responded to the BR Parties' challenge, arguing that the challenge was untimely and lacked any valid basis. On February 22, 2022, the AAA denied the BR Parties' request to assign a new arbitrator.

On February 8, 2022, while its challenge to Judge Finkle was pending before the AAA, the BR Owners each filed actions in the Orange County Superior Court against Black Rock, the AAA, and Judge Finkle. The BR Owners requested injunctive and declaratory relief. On April 12, 2022, Black Rock removed those cases to the United States District Court, Central District of California. On April 25, 2022, that court ordered that venue be transferred to this Court, but the transfer was not effectuated until August 24, 2022. This Court then consolidated the cases, with the Arbitrability Case as lead.

Back in the arbitration, on March 14, 2022, while the court litigation was pending, Black Rock filed a Motion for Sanctions, relying on the January 28th Discovery Order, which expressly allowed for a sanctions motion. Black Rock argued that sanctions were warranted because both

the BR Entities and the BR Owners failed to respond to discovery requests as required in the January 28th Discovery Order. Black Rock requested that all Requests for Admissions (RFA) be deemed admitted, that adverse inferences be drawn in their favor on every discovery request, and that the BR Parties be precluded from offering any evidence in support of their counterclaims and defenses. At this point, Judge Finkle was still a defendant in a pending lawsuit brought by the BR Parties and had recently been reaffirmed as the arbitrator after their challenge before the AAA that he should be removed based on purported bias and incompetence.

On March 31, 2022, the BR Parties sent an email to Judge Finkle and opposing counsel, explaining that in light of the pending civil court actions to which the AAA and Judge Finkle were parties and represented by counsel, they believed that all briefing, argument, and rulings should be stayed until the civil cases were decided. They requested that if Judge Finkle believed further briefing was needed on the pending motion, to have his attorney contact counsel for the BR Parties. Neither Judge Finkle nor his attorney responded to this email.

On April 13, 2022, Judge Finkle issued his ruling on Black Rock's Motion for Sanctions. Judge Finkle noted that the BR Parties had not sought any interim relief from the court in which their case was pending, had not sought a protective order to preclude or limit discovery, had not responded to the Motion for Sanctions, and had not provided discovery. Judge Finkle determined that he had authority to rule on the pending motion and that there was no good cause to delay the arbitration or resolution of the motion. Judge Finkle ordered sanctions as follows: (1) each RFA would be deemed admitted and the BR Parties would be precluded from introducing any evidence that contradicted such admissions; (2) the many specific adverse inferences requested by Black Rock would be drawn for every document request; and (3) the BR Parties would be precluded from introducing any evidence or testimony in support of their counterclaims and affirmative defenses.

Meanwhile, in the Arbitrability Case, on June 16, 2022, the AAA and Judge Finkle were dismissed from suit per agreement of the parties, leaving Black Rock as the sole defendant. After the case transfer was effectuated, the Court ordered the parties to file a status report by September 2, 2022. The Court scheduled a telephone status conference for September 14, 2022. The Court identified two threshold issues that it would resolve before the arbitration hearing scheduled for December 5, 2022: (1) whether the Court or the arbitrator had the authority to determine whether the BR Owners were subject to arbitration; and (2) if the Court had the authority, whether the BR Owners were subject to arbitration.

To ensure it could issue a decision before the December 5th arbitration hearing, the Court set the following schedule to determine two threshold issues the Court had framed relating to arbitrability: "All parties will submit initial briefs not later than October 10, 2022; response briefs will be due by October 24, 2022; and reply briefs are due by November 7, 2022. The Court will endeavor to resolve all issues as appropriate, not later than the end of November." *Goergen v. Black Rock Coffee Bar, LLC*, Case No. 3:22-cv-1258-SI, *Minutes of Telephone Scheduling Conference* (September 14, 2022) (ECF 41). The parties then had a dispute relating to a protective order, so the Court suspended briefing on the arbitrability issues and resolved that dispute. The Court reset the arbitrability briefing by having Black Rock file its brief on October 27, 2022 (the BR Owners had already filed their first brief) and both parties file simultaneous response briefs on November 10, 2022. When the BR Parties raised evidentiary objections in their final brief, the Court ordered Black Rock to respond by November 18, 2022.

The arbitration continued, and Black Rock filed a Motion for Summary Disposition on September 23, 2022, after this Court had set its expedited briefing to resolve the arbitrability questions before the scheduled arbitration hearing. This motion was largely based on Judge Finkle's April 13th Sanctions Order. On October 21, 2022, Judge Finkle granted Black Rock's

motion. On November 7, 2022, Judge Finkle struck the evidentiary hearing scheduled for

December 5, 2022. On November 15, 2022, in response to this Court's order requiring Black

Rock to respond to the BR Parties' evidentiary objections in an expedited manner, Black Rock

notified the Court by email that the December 5, 2022 arbitration had been canceled due to Judge

Finkle's order on Black Rock's motion for summary disposition. No longer facing the December

5th deadline, the Court more thoroughly examined the arbitrability issues.

On November 18, 2022, the BR Parties notified the AAA and Judge Finkle that this

Court was reviewing the arbitrability issues and provided a copy of the arbitration briefing that

had been filed before this Court. Nonetheless, on December 12, 2022, Judge Finkle issued a

Final Order on Black Rock's Motion for Summary Disposition, and Award (Final Order) in

favor of Black Rock. The Final Order incorporated by reference the October 21st Order and set

out the amounts awarded to Black Rock against the BR Entities and the BR Owners. The

arbitrator awarded more than $31 million in damages and attorney's fees, with various offsets

depending on how amounts were collected and from whom.

On January 5, 2023, Black Rock filed with the Court in the Arbitrability Case a status

update and request for ruling on the arbitrability issues, noting that although the arbitration

hearing was canceled the issues remained urgent and ripe for review. On January 10, 2023, the

Court issued its Opinion and Order, concluding that it is for the Court and not the arbitrator to

determine whether the BR Owners are parties to a contract subjecting them to arbitration. *Black

Rock I*, 2023 WL 142911, at *4. After allowing supplemental briefing, on February 6, 2023, the

Court concluded that the BR Owners, as nonsignatories of the relevant agreements and not

otherwise bound by the agreements, were not subject to arbitration. *Black Rock II*, 2023

WL 1777980, at *14. The Court permanently enjoined Black Rock from directly enforcing the

arbitration award against the BR Owners. Black Rock did not appeal the Judgment from this Court.

After each of the Court's January 10th and February 6th Opinions, the BR Parties contacted the AAA and requested that they remove Judge Finkle as arbitrator and vacate the arbitration awards. On January 13 and February 7, 2023, Mr. Gothelf responded that it is for a court, and not the AAA to vacate an arbitration award and that they cannot remove Judge Finkle because the final award was issued and the case was closed. On February 7th, Mr. Gothelf also explained that Judge Finkle had no authority to make any modification to his arbitration award because he had issued a final award and the case was closed.

In February 2023, Black Rock filed a state court action to confirm the arbitration award, which the BR Entities removed. In that case, the BR Entities filed a motion to vacate the arbitration award. The case was originally assigned to a different judge in this District but later transferred to the undersigned District Judge. On March 21, 2023, the Court held a telephone conference to discuss jurisdiction over the parties and their cross-motions and the best path forward. The parties agreed to re-open this closed case and refile their respective motions in this case, stipulating that the BR Parties' motion would be timely under the FAA and requesting that the Court construe Black Rock's motion to confirm as brought under the FAA instead of state law.

## DISCUSSION

### A.    Request for Judicial Notice

The BR Entities request that the Court take judicial notice of 57 documents. ECF 64, 69. The BR Entities argue that judicial notice is appropriate for "court filings and other matters of public record." ECF 64 (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). Not all of the requested documents, however, are public records or court

filings. For example, the BR Entities request judicial notice of letter and email correspondence between counsel for the BR Entities and opposing counsel, the arbitrator, or the AAA.

The parties do not discuss on what standard the Court should review a motion to vacate—such as whether the Court should review the motion like a motion for summary judgment, in which evidence may be considered. The parties appear to treat the motion as if it must be considered like a Rule 12(b)(6) motion. Nothing in the FAA, however, states that motions to vacate may not consider appropriate evidence. The FAA provides that "[a]ny application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Indeed, discovery is available in a proceeding to vacate an arbitration award, albeit "only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." *Thomas Kinkade Co. v. Hazelwood*, 2007 WL 217384, at *2 (N.D. Cal. June 26, 2007) (quoting *Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. 2000)). Courts have considered extrinsic evidence in resolving motions under the FAA. *See, e.g.*, *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, 2014 WL 12572928, at *10 (C.D. Cal. Nov. 5, 2014), *aff'd in part, rev'd in part on other grounds*, 663 F. App'x 567 (9th Cir. 2016); *Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F. Supp. 2d 1187, 1206 n.5 (D. Mont. 2013). Black Rock does not oppose the BR Entities' request for judicial notice of public records, so long as the Court does not take judicial notice of the facts, but objects to the remaining documents.

The Court takes judicial notice of the public records and their contents, although not the truth of the facts recited therein. The Court, however, also accepts the exhibits of communications to and from counsel for the BR Entities, as authenticated by counsel for the BR Entities. Such communications are relevant to the BR Entities' motion to vacate. The Court

considers these communications for their existence and contents, although not for the truth of any facts stated therein. The Court, therefore, grants in part the BR Entities' request for judicial notice, taking judicial notice of public records but also considering the existence of the private correspondence as appropriate under 9 U.S.C. § 6.

**B.      Motion to Vacate**

The Court must confirm the arbitration award unless it is vacated per the BR Entities' motion to vacate, so both pending motions turn on the BR Entities' motion to vacate. The BR Entities argue that the arbitration award should be vacated under 9 U.S.C. § 10(a)(3) and (4) for several reasons. The BR Entities contend that the arbitrator exceeded his powers, made several cumulative errors that resulted in a fundamentally unfair arbitration, issued an award that exhibits a manifest disregard of the law, refused to postpone proceedings when he should have, refused to hear material and pertinent evidence, and engaged in repeated behavior that unfairly prejudiced the BR Entities' rights. The heart of the BR Entities' challenge begins with the error this Court has already determined—the arbitrator's conclusion that he had the authority to determine that the BR Owners were subject to arbitration.

Judge Finkle erred when he concluded that an arbitrator, and not a court, determines the threshold issue of whether a party is subject to a contract that contains an arbitration provision, and granted Black Rock's motion to amend. As the Court explained in its January 10th opinion in the Arbitrability Case, "[p]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence, but before referring a dispute to an arbitrator, the *court* determines whether a valid arbitration agreement exists." *Black Rock I*, 2023 WL 142911, at *2 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (cleaned up) (emphasis added in *Black Rock I*). The arbitrator relied on the incorporation of AAA Rules in the underlying agreements, to which

the BR Owners were not a signatory, as granting him authority to adjudicate "gateway issues," including whether "there is an agreement to arbitrate." As the Court explained in rejecting Black Rock's reliance on the agreements' incorporation of AAA Rules, however, "Black Rock is putting the cart before the horse in relying on the fact that contracts to which [the BR Owners] were not a named party incorporated the AAA Rules as the basis to *subject* [*the BR Owners*] to the arbitrator's jurisdiction to determine whether an arbitration agreement even exists." *Id.* at *3 (emphasis in original). The Court continued, explaining that the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. *To be sure*, before referring a dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists*." *Id.* (quoting *Henry Schein, Inc.*, 139 S. Ct. at 530) (emphasis added in *Black Rock I*).

To constitute a manifest disregard of the law, and thus qualify as exceeding the arbitrator's powers under § 10(a)(4), there must be evidence beyond the error itself that the arbitrator knew of the law and disregarded it. *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1241 (9th Cir. 2022). On October 6, 2022, the BR Parties submitted longstanding, binding precedent to the arbitrator in arguing that it was for a court and not the arbitrator to determine whether a valid arbitration agreement exists. The arbitrator ignored that precedent and relied only on the agreements' incorporation of the AAA Rules. In November 2023, the BR Parties also provided the arbitrator the briefing before this Court, which further detailed the law. The arbitrator ignored that in issuing his final award. As the Ninth Circuit explained in an analogous context, "[w]hat an arbitrator may not do, however, is disregard contract provisions to achieve a desired result." *Aspic Eng'g*, 913 F.3d at 1167 (concluding that the arbitrator's award was "completely irrational"). An arbitrator also may not disregard binding law to achieve a

desired result. Thus, the arbitrator's order granting Black Rock's motion to amend was a manifest disregard of the law and exceeded his powers under § 10(a)(4).

Although this error specifically affected only the BR Owners, it "tainted the entire process." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 265-66 (5th Cir. 2015) (affirming district court's vacatur of entire award, noting that "a district court does not have to vacate in part and confirm in part just because it may do so" and concluding district court did not err where conduct tainted the entire process and damages were lumped together). After the arbitrator improperly added the BR Owners, the BR Parties objected to the arbitrator with the AAA and tried to remove him and filed a lawsuit in court.

While these objections were pending, the BR Parties refused to participate in the arbitration—the BR Owners because they did not believe the arbitrator had jurisdiction over them and the BR Entities because they believed that the arbitrator, a defendant in their pending lawsuit and recent subject of their request to remove him, could not perform his duties in a fair and impartial manner. Because of these lawsuits and requests to remove the arbitrator, which stemmed from the arbitrator's improper decision to add the BR Owners to the arbitration, the BR Parties missed a hearing and filing deadlines and the arbitrator issued case terminating sanctions and what equated to a default judgment against them for millions. There is no reasoned way to carve out the original error affecting the BR Owners and have the existing arbitration with the BR Entities stand. Moreover, as discussed next, other conduct by the arbitrator supports complete vacatur.

After the BR Parties raised their objections about Judge Finkle, requested he be removed, and filed their lawsuit, the arbitration went off the rails. Throughout most of 2022, the Court concludes that the arbitrator's conduct violated §10(a)(3), both in failing to postpone matters and through conduct that unfairly prejudiced the rights of the BR parties. "In determining whether an

arbitrator's misbehavior or misconduct prejudiced the rights of the parties, we ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016).

Starting with the discovery hearing on January 27, 2022, the BR Parties did not get a fundamentally fair hearing. At that point, the BR Parties had informally, but not yet formally, objected to Judge Finkle and requested his removal. They were communicating with Mr. Gothelf, who rescheduled a January 10th discovery hearing to January 27th so it could be heard after the BR Parties' objections were resolved. The BR Parties complained on January 26th that setting the hearing for January 27th was arbitrary and their issues raised on January 10th that required a new hearing date remained pending. They reiterated on January 27th their belief that the hearing was not moving forward because their objections to Judge Finkle were outstanding and their intention not to participate on the call.

It may have been reasonable for Mr. Gothelf to move forward with the January 27th hearing because the BR Parties had not formally filed their objections to Judge Finkle by that date, but Mr. Gothelf never responded to these emails nor informed the BR Parties that the hearing remained on calendar. It was clear that the BR Parties did not expect the hearing to go forward as scheduled. Nor did Mr. Gothelf tell Judge Finkle during the hearing that the BR Parties had requested a postponement or otherwise objected to the hearing date. After Judge Finkle issued his January 28th Discovery Order, the BR Parties informed him of their prior objections and Mr. Gothelf's failures, but Judge Finkle made no changes to his Order. The failure of Mr. Gothelf either to postpone this hearing or notify the BR Parties that it remained on calendar, and of Judge Finkle to make any allowance after learning about the BR Parties' pre-hearing objection and request for postponement, resulted in the BR Parties not obtaining a fundamentally fair process with respect to this hearing.

After the BR Parties filed their lawsuit, the arbitrator and Black Rock knew that a court would be resolving the question of who had the authority to determine whether the BR Owners were subject to arbitration. Yet Black Rock and the arbitrator continued, relying on the unfair January 28th Discovery Order. Black Rock moved for case terminating sanctions against both the BR Owners and the BR Entities. The BR Parties not only requested that this motion not be heard while the lawsuit was pending but also requested that if the arbitrator intended to proceed, he notify the BR Parties.

The arbitrator resolved the motion in Black Rock's favor as unopposed. There was good cause to postpone consideration of that motion, however, because the lawsuit challenging whether the BR Owners should even be subject to the arbitrator's jurisdiction was pending. Additionally, it was fundamentally unfair not to notify the BR Parties that they needed to respond when they had previously stated their intention not to respond during ongoing litigation unless otherwise notified. And the basis of this motion was the unfair January 28th Discovery Order. Thus, Judge Finkle's April 13th Sanctions Order also was unfair.

After Black Rock and the BR Parties were heard in this Court regarding the need for a quick resolution of the threshold arbitrability issues and the Court set an expedited schedule to resolve the issues before the scheduled arbitration evidentiary hearing, Black Rock and the arbitrator accelerated the arbitration. On September 23, 2022, Black Rock moved for summary disposition against the BR Parties, based mostly on the unfair April 13th Sanctions Order. Black Rock filed that motion despite knowing this Court was poised quickly to resolve whether the arbitrator had exceeded his authority in adding the BR Owners to the arbitration. The arbitrator granted Black Rock's motion. Then, even though the BR Parties had notified the arbitrator of the expedited litigation in this Court, the arbitrator issued his final award and closed the case. The issuance of the final award while this federal case was pending ensured that no matter what this

Court decided about the propriety of the arbitrator adding the BR Owners, neither the arbitrator nor the AAA could modify or change the arbitrator's decision. This pending federal lawsuit and the expedited nature of this Court's anticipated determination of the arbitrability issues was good cause to delay hearing Black Rock's motion for summary disposition and to delay entering the final award. The arbitrator's failure to postpone consideration of that motion and delay entering the final award violated § 10(a)(3). Additionally, it was fundamentally unfair for the BR Owners to defend a summary disposition motion while litigating in federal court whether they were even subject to arbitration and for the BR Parties to defend such a motion after having not received fair hearings on the discovery issues that left them with almost no ability to defend the summary disposition motion.

Each of these errors resulted in the BR Parties not receiving a fundamentally fair process, but the cumulative effect of these errors resulted in significant prejudice to the rights of the BR Parties. The BR Owners were forced into an arbitration that had no jurisdiction over them. The BR Entities were stripped of their ability to respond to discovery, produce evidence, or assert affirmative defenses. One unfair order after another built upon themselves until the arbitration ended with essentially a multi-million dollar default judgment. Reasonable minds may disagree about whether the BR Entities should have attempted to participate in the arbitration while the BR Owners refused, but after Judge Finkle ordered the BR Owners to participate, it became a fraught landscape to navigate. And Black Rock included both the BR Owners and the BR Entities in all of Black Rock's motions. It would have been difficult for the BR Entities to defend and the BR Owners to ignore the motions, when Black Rock and the arbitrator refused to acknowledge the difference in status between the BR Owners and the BR Entities. Regardless,

the Court concludes that all the errors are inextricably intertwined between the BR Owners and
the BR Entities and not able to be parsed. Complete vacatur therefore is warranted.[3]

## CONCLUSION

The Court GRANTS Respondents' Motion to Vacate Arbitration Award, ECF 62, and
GRANTS IN PART Respondents' Requests for Judicial Notice, ECF 64, 69. The Court DENIES
Petitioner's Petition to Confirm Arbitration Award, ECF 60. The arbitrator engaged in conduct
prohibited under 9 U.S.C. § 10(a)(3) and (4). Accordingly, the Court VACATES the final award
of the arbitrator. The Court directs the parties to file supplemental briefs on whether the Court
should direct a rehearing under § 10(b) limited to Black Rock's claims against the BR Entities
and, if so, under what conditions. Simultaneous opening briefs of no more than 15 pages are due
April 18, 2024, and simultaneous response briefs of no more than 10 pages are due May 2, 2024.

**IT IS SO ORDERED**.

DATED this 3rd day of April, 2024.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

---

[3] Because the Court vacates on these grounds, the Court declines to reach the BR Parties'
other arguments.